The 4th District Appellate Court of the State of Illinois has now convened. The Honorable James A. Kinect presiding. Good morning. Our first case of the morning is 420-0164, City of Springfield versus the Springfield Firefighters Internal Association and the Labor Relations Board and related parties. Would counsel for the petition for the appellant please state your name for the record? Stephen Ron, Assistant Corporation Counsel. I think your volume is not adequate, Mr. Ron, if you want to adjust that. And would counsel for the appellees please introduce yourselves? I'm Valerie Quinn on behalf of the Labor Board, Your Honor. Good morning, this is Matt Pierce on behalf of the respondent, Springfield Firefighters Local 37. May it please the court, the board's decision in this case we think effectively does away with impact bargaining. In this case, the City of Springfield Civil Service Commission adopted a rule of general application and it was stipulated that all of the public notice requirements and everything necessary to adopt a civil service rule were complied with. That rule enacted preference points for civil service promotions for any promotion that is done through the civil service. Now, state law dictates that no change in the civil in residency requirements can be applied to firefighters or police officers once they're hired. You cannot get stricter and we have recognized that and we have not applied the civil service rule to any current members of the charging unit unions. The city on multiple occasions offered to bargain the application of the rule for future hires. New hires cannot apply for a promotion for at minimum of seven years in the case of firefighters and I believe it's 10 years in the in the case of police officers. So the city offered to negotiate and bargain on those issues when are in in anticipation of them eventually having people who are able to apply and bargain who were hired after September of 2018. Both unions refused to bargain on that and then the board determined that the city committed the unfair labor practice by refusing to bargain. In this case, the issue is not whether the city of Springfield has to bargain over a civil service rule. We recognize that we do and we have offered to bargain before it becomes implemented against either of the the firefighters or the the police unions. That's commonly known as impact bargaining. The employer adopts a work rule of general application for both non-union and union alike. Take for example a mask mandate. All employees must wear a mask at the office. Assuming a mask mandate would be a mandatory subject of bargaining for the purpose of this example, the rule would apply immediately to non-union employees such as myself. But before it's enforced against union employees, the unions must be given an opportunity to bargain the application to their members. That's long been called impact bargaining and impact bargaining can cover any aspect of the rules application. They can bargain that it doesn't apply to union members. They can bargain that the union members get a dollar an hour bump if they're wearing a mask. They can argue that it doesn't have to be worn in certain circumstances. But in this case, the board held that the bargaining over the work rule must occur before it is adopted, not before it's applied. In other words, an employer cannot adopt using the example I gave, an employer could not adopt a mask mandate without first bargaining with all the applicable unions. In the city of Springfield's case, that's 24 bargaining units. Furthermore, the board held that that bargaining must occur even if the rule in question does not apply to any of the union's current members. As I said, the city has 24 bargaining units, 24 separate contracts, quite a few non-union employees. 1,400 city employees are subject to civil service commission. But when this rule was adopted in September of 2018, the rule actually applied to exactly zero employees. Nevertheless, the board held that it must be negotiated before it's adopted, not just before it's implemented. In other words, impact bargaining as we've known it for years is no longer a thing. Now, twice the Illinois Supreme Court has addressed negotiation of civil service rules. In Decatur versus AFSCME in 1988, and then again in AFSCME versus Cook County in 1991. Both times, the civil service rule had already been adopted, but the employer was refusing to no, you do have to negotiate. And the reason that you would have to negotiate even a civil service rule, it's because the civil service rules can be unilaterally changed. And therefore, since the civil service commission is a separate entity, and because the rule can be changed, you have to impact bargain after that before you can apply it to union members. Now in the briefs, the charging parties attempt to dismiss Decatur versus AFSCME suggesting that the statement that civil service rules can be unilaterally changed is just a bit of dicta, but that's not the case. This was the actual rationale for the decision. And that was made clear in the next case of AFSCME versus Cook County, which expressly stated that because civil service rules are changeable, they must be negotiated before they're implemented. Now it's undisputed that the rule in this case has not been applied to any union member. And it's also undisputed that the city repeatedly offered the bargain on how it would be applied when new hires acquire enough seniority to apply for promotions. The board's decision in this case contradicts their own precedent in an earlier case involving the city of Springfield. That case is cited in our briefs. It was IBEW versus Springfield. The board held there that the employer must afford an opportunity to bargain before implementing a change, not before adopting it. That was a case where the city council of Springfield adopted an ordinance that changed how accrued vacation would be paid out to retiring employees. And to give the employees time to consider whether they wanted to retire under the old rule or the new rule, they said that this would not apply for a year. The unions there also argued that the city has to bargain before the rule is adopted. And the board's administrative law judge in that case agreed, but the board rejected it saying that no, it's enough that they have an opportunity to bargain before it goes into effect. Now the board purported to- In that case, there's a certain immediacy to that bargaining though. This bargaining could theoretically not take place for seven years. Isn't that correct? That's true. But isn't the purpose of bargaining and the interaction between the employer and employee to have some degree of certainty? I'm applying to be a police officer. I don't know whether I'm going to be eligible for promotion in six years, 10 years, 25 years. How do I know? I don't know because you've adopted a rule and I don't know what the result of the bargaining will be. I don't know how long the bargaining will take. I don't know when the bargaining will begin. I don't disagree with you about the purpose of impact bargaining, but it seems as if it should not be a means by which to avoid confronting a problem now or an issue now and making a decision. Well, we're not trying to avoid confronting the issue now. We have offered to bargain at any time. The unions refuse to do so. I understand that you have offered that. My next thought would be, it sounds like kicking a can down the road. I mean, yeah, we're going to do what we want to do, but we'll bargain when you guys get ready to come to the table. We'll be there. I know I'm speaking in very somewhat practical, perhaps naive terms, and I also didn't quite understand why you thought all the employees in the city of Springfield would somehow throw up their hands and say, you know, this is bad or the city would say this is bad because it sets a precedent. You're already suggesting it must not be a precedent because it's been ruled to the contrary on another case. We're talking about policemen and firemen. We're not talking about all the other employees. Is that correct? In this particular case, yes, but not necessarily with the civil service rules. Civil service commission applies to all employees and what this decision by the board says is that a civil service commission cannot adopt any rules without first bargaining with all of the unions. I mean, in this case, there's only two that objected, but theoretically, no civil service rule can be, well not theoretically, under the board's decision, no civil service rule can be adopted before making available to all of the unions to bargain. And not even, and even then, not all of the employees are members of unions. That's defeating the entire purpose of impact bargaining. You make a rule and then if any of the unions have an objection to it, they can come to the bargaining table or demand that the city go to the bargaining table. In this case, the city was sitting at the bargaining table and they were joined by the unions. And so in answer to your initial question, I think any uncertainty and any kicking the can down the road has been done by the unions, not by the city. The city stands ready to bargain. Okay. Thank you. I know I've interrupted your argument. You may proceed. Okay. The board attempted to distinguish the IBEW versus Springfield case by saying, well, the ordinance change in that case didn't go into effect for a year, but that is not a distinguishing factor when you consider that as to any employees of these unions, it won't go into effect for at least seven years. And, you know, the city stands ready to bargain at any time. We've made our overtures to bargain and we've been rebuffed by the union and then held by the board to have refused to bargain. The city has not refused to bargain. And we would ask that the finding of an unfair labor practice be overturned. Any questions? Have you concluded your opening argument? I have your honor. If there are no further questions, I would yield the remainder of my time. And we compliment you and thank you for the opportunity. Which of the employees will speak first? We've agreed that the board will go first, your honor. Thank you. May it please the court. The city does not dispute the criteria for promotion is a mandatory subject of bargaining. Promotion clearly affects wages and working conditions. The city's argument instead depends upon its claim that it has not yet applied its amended rule to any bargaining unit members and that it won't do so for at least seven years. But the city also does not dispute that its rule change was effective on the date that the commission voted to pass it. The actual text of rule 4.3D1 itself says unambiguously that it is effective as of the date the rule is passed by the commission. And as the board pointed out, the fact that the affected employees haven't felt the pain of this rule change yet does not mean that it isn't effective or that it hasn't been implemented. For purposes of an unfair labor practice, your honors, a change to a mandatory subject of bargaining is effective when unambiguously announced, not when the consequences become painful, which in this case could be six and a half years too late for an unfair labor practice. The city also argues that it is offered to bargain over the impact of the rule change. That is insufficient once you've passed it. When a matter involves a mandatory decision, the decision itself must be bargained in advance. Furthermore, even if it were only a matter of effects bargaining rather than decisional, effects still need to be bargained before a change is made. First, as noted, and as probably belabored in this case, the decision to add three years to exams as a reward for voluntarily choosing to live in the city is a mandatory subject of bargaining, so it needed to be bargained before the city implemented it. But even for those topics that are a matter of an employer's inherent managerial authority, the board has ruled again and again that bargaining over effects must take place before the change is made. In its brief, the city argued that no court has ever held that a public employer must bargain a rule before its civil service commission adopts that rule. That kind of turns all the assumptions about decisional bargaining on their head, because bargaining a change to a mandatory subject is supposed to occur before the change is made. That's how it's understood, and it's such a basic concept that it's true. You're going to have a hard time finding a case that phrases it exactly that way. Courts typically say something more like what the first district said in Amalgamated Transit Union, that an employer violates its obligations under the act if it makes a unilateral change to a mandatory subject of bargaining without granting notice and an opportunity to bargain with its employee's exclusive representative. In other words, you can't do it by fiat. You have to bargain it first, and you can't hide behind your own civil service commission to say, well, they made us do it. No, civil service commission is part of the city. It was the city's district. It came close in the gang order case when it held that enacting a rule change about associating with people the sheriff's knew or should have known were gang members presented the bargaining unit with an impermissible fit a complete. In other words, the city imposed it without first bargaining it, and that's exactly what the unions were presented with here, an impermissible fit a complete. And for that reason, the board asked this court to affirm its final administrative decision. And that's really all I have, your honors, unless the court has questions. I have any questions. Yes. Yeah. Mr. Ron argued that the board's decision does away with impact bargaining. What's your response? No, it doesn't. Bargaining over impact still has to at least start. It may not necessarily have to conclude before the decision is implemented, but it at least has to be started. And there are prior board decisions that have never been challenged that, that, that say exactly that. Okay. This is not an area of expertise for me. Can you explain what impact bargaining means? Certainly the decisional bargaining involves wages, hours, working conditions, things like subjects like that impact or effects are to be bargained over when an employer has made a decision that's part of its inherent managerial authority. In other words, things like its budget, the scope of its mission, what sort of services it's going to provide to its constituents, whether it's going to reorganize itself, those are subjects over which an employer has inherent control. It may still have to bargain the effects. For example, an organization could decide to reorganize and some employees may be laid off as a result of that. The effect of the layoffs is going to have to be bargained. And that could include things like, you know, seniority and recall rights and, you know, offering retraining, topics like that. It's the effects of what the decision was, not the decision itself. Okay. Thank you. Mr. Pierce. Thank you and may it please the court. First, I'd like to thank Ms. Quinn for her presentation. And I will try not to duplicate any of the arguments, but there are a few key points that I'd like to focus in on. And let me start by saying that in our view, this is an incredibly straightforward case. There are very few material facts in this case and even fewer disputed facts. And as the unions have pointed out throughout every stage of this proceeding, this case really is just a straightforward application of the statutory duty to bargain over mandatory subjects of bargaining under the Illinois Public Labor Relations Act. Now, two and a half years into this case, the case I think is even simpler and even more straightforward. And this is principally because the city has chosen not to contest the majority of the legal issues that could have come up in this case. And on appeal, the city has either waived or forfeited any and all arguments that could impact the outcome of the labor board's decision in this case. Ms. Quinn touched on some of these issues, but just to summarize, I think all of the respondents have laid these issues out in their briefing. The city has conceded throughout this case that its civil service commission is an arm of the city. That is, it's not a separate entity, as Mr. Rahn has suggested this morning. It is an arm through which the city takes action. The Public Labor Relations Act actually defines employer to include its commissions, and both the ALJ, the administrative law judge Matthew Nagy, in this case, and the labor board held that the city failed to argue that the commission is a separate entity, and thus it waived that argument at that level. At this point, the argument has been doubly waived or forfeited because they're not even arguing in their briefing that the addressing commissions and other arms or aspects of public employers is clear that an employer like the city cannot hide behind a commission that it has chosen to create. In this case, there's no dispute that the civil service commission was adopted voluntarily by the city, was not required to adopt that commission, and it cannot now use that commission to say that's out of the control of the city. You know, this is a separate entity making a decision, and we just have to talk about how it will impact certain employees. That rule change was an act of the city. That is a matter that the city has conceded, and they have not argued that point. I think perhaps most importantly, and Ms. Quinn touched on this as well, the city concedes in this case that, and this is as the labor board noted, the city concedes that changing promotional residency preferences concerns a mandatory subject of bargaining, and that before implementing any change to those preferences, the city has a duty to provide notice and bargain over that issue with the unions. I think a central issue here that's really driving the city's appeal is a, what I believe to be a misunderstanding or a misinterpretation of the difference between decisional bargaining and impact bargaining. The Public Labor Relations Act creates this duty to bargain between unions and the employers that have recognized those unions. That duty involves the duty to bargain over any changes to working conditions and the impact or effect of those changes. Traditionally, impact bargaining only comes up as an issue, as Ms. Quinn pointed out, when you're talking about something that falls within the inherent managerial authority of an employer. In that case, you're talking about an action that the employer can take unilaterally. They do not have to bargain over whether they're going to take that action. So, things like operational budgets, things like layoffs due to a lack of funding, those are generally actions that an employer like the city of Springfield can take, and we're not going to, as the advocates for the unions, we're not going to be able to bargain over the specific decision to change operations or layoff. But the city, nonetheless, has a duty to bargain over how that decision is going to impact us and our members separately. So, in the context of layoffs, impact bargaining will often involve severance agreements. It will involve bargaining the continuation of health insurance. These are issues that arise separately from the decision, but are not part of the decision themselves. And the administrative law judge, Nagy, in this case, I think included a spot-on explanation of the difference between impact and decisional bargaining. As he said, impact bargaining cannot be an attempt to change the underlying decision itself. It can only be bargaining over how that decision impacts other aspects of employment. So, in this case, when the city says they have offered to bargain the impact of this rule change, what they're actually saying is they think that impact bargaining could change the decision itself. That we could sit down and say, in fact, we don't want this rule to apply to our members, to the firefighters and police employed by the city of Chicago, sorry, the city of Springfield, and that would be somehow satisfying the city's obligation to bargain. That is not impact bargaining. That is decisional bargaining, because you're talking about the underlying decision. And the statute is clear, and the courts interpreting this are clear. That bargaining on the decision itself, which is mandatory, has to take place before a change is enacted. As Ms. Quinn noted, there's no dispute here that the rule change at issue took effect on September 5th, 2018, the date it was adopted. That was the cutoff. Any bargaining over that decision with the unions had to take place before September 5th, and it did not. That is not a dispute. As to the timing of the harm, which I think is another central plank of the city's argument, they say that because this rule change can't be applied for seven to 10 years to any current or future bargaining unit members, that means there's been no change. And again, both the board and the ALJ confirmed that an unfair labor practice happens when the change is unilaterally announced and when it is unequivocally announced that this change is going to happen. To illustrate this, I think just to put it in simple terms, if the city were to decide today, you know, through its civil service commission or otherwise, that it would no longer recognize Thanksgiving as a holiday for its police officers and its firefighters, the employees that are going to be affected by that decision obviously are not suffering any harm today. You know, Thanksgiving is several months away, more than six months away. So there will be no loss of pay. There will be no rescheduling of travel plans, anything like that today. But because that decision is effective today and it is announced unequivocally today, that is the date on which the change has been made. So for purposes of bargaining, assuming that that's a mandatory subject of bargaining, the city would have had to notify the unions before making that announcement. It could not make an announcement and then say, we welcome any discussion over whether this will be applied. That's already too late and you've already violated your duty to bargain under the act. One point that I did want to respond to, Mr. Rahn's argument that this civil service rule is one of general application, one that applies to, you know, about a thousand employees or not represented by the firefighters or the police union. And to be clear, this rule involves preference points for promotional examinations. There are five positions within the city of Springfield that actually take these promotional exams, three of which are in the fire department. All three of those are positions that are represented by the Springfield Firefighters Union. The other two are police department positions. So the only employees of the city of Springfield that take any sort of promotional examination are members of either the Firefighters Union Local 37 or the PVPA Unit Number 5, the two complaining unions here. So I think it's simply not accurate to say that this was a generally applied rule that was adopted to when in fact the only employees that could possibly be affected by this are the union members. I do think that if the city's position is adopted here, it's no exaggeration to say that this would mean the end of the duty to bargain as we know it under the Labor Act. According to the city, as long as a change isn't going to come into effect or hurt any employees for a certain period of time, then there's no problem with adopting that change right away without bargaining and then simply saying we can talk about the effects later. If this were accepted, the city could adopt a rule that says 10 years from now all firefighters will be stripped of seniority, stripped of rank, stripped of all benefits, and they'll become at-will employees who receive the minimum wage. That again would not impact anyone immediately and under the city's position, they could adopt that right now. They could make that announcement unilaterally to their employees and the only recourse would be to request what the city styles as impact bargaining, but which is in fact decisional bargaining after the fact. And that is not sufficient to satisfy the duty to bargain under the Act. One point that I did want to clarify here when we talk about residency restrictions, that term generally means a condition of employment that an employee must be a resident of the city. So in order to remain employed at the city, for example, newly hired firefighters have to be a resident of the city of Springfield for the first 15 years of their employment. That is a residency restriction, and those types of restrictions are subject to the limitations under the municipal code that the city has referred to. Those restrictions cannot be made more demanding or more severe for current employees. Residency restrictions were in fact and the Springfield firefighters in their most recent contract did in fact agree to a residency restriction prospectively for new hires. That's a matter that was bargained, agreement was reached. The issue here has nothing to do with restrictions for residency. This is a preference point that is added to someone's score when they're trying to test for a promotion. It's not a requirement for that promotion that you become a resident. It's simply a leg up on other applicants. And here there's no question, the record's clear, that the city never attempted to bargain with either union about adding these residents preference points. That really is the crux of this case here. So to conclude, the city of Springfield admits that this is a mandatory subject of bargaining, these preference points. The city admits that before making any change, they're required to bargain the decision to make that change. And the city admits that it gave no notice and it did not bargain this issue with either union. Both the ALJ and the labor board in this case correctly found that this was a violation of the duty to bargain. And on behalf of both of the respondent unions, I'd respectfully request that this court affirm the labor board's decision. Thank you, counsel. Mr. Rahn on rebuttal. Yes, I would point out that impact bargaining and decisional bargaining are terms that are not defined in the Labor Relations Act. There is no definition there. And the fact or the attempt to limit it to only things that are subject to is simply not true because Central City says that if it's inherent manager management authority, there's no need to bargain it anyway. What impact bargaining is, is if the if the city adopts a rule of general application, as the example, I gave a mask mandate, then the individual unions can come forward and impact bargain as to how it would apply. And they are not limited by simply how it would apply. They can essentially negate the rule for an individual union because collective bargaining agreements always supersede ordinances. They always supersede civil service rules. The collective bargaining agreement is at the top of the pack. And if the city were to adopt a rule saying that Thanksgiving isn't recognized for firefighters, and the firefighters came in and negotiated into their contract that it was, that would be impact bargaining. And that would take precedent over the the rule. So I would suggest that the the proper effective application of impact bargaining is when the city adopts a rule that's applied are applicable. Generally, the unions can come in and before that general rule is applied to any union, any union member, the unions have the opportunity to negotiate on that. That's all I have unless there are any questions. Thank you. We thank Council and we'll take this matter under advisement and await the readiness of the next case. Thank you.